Clerk's Office
Filed Date: 4/19/2026
Received on 4/30/2026
C.C.F.
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

ELISHA FINMAN,                                      :
                                                    :
                              Plaintiff,            :
                                                    :        MEMORANDUM & ORDER
              -against-                             :
                                                    :        23-CV-3537 (ENV) (VMS)
TRANSUNION, LLC, EQUIFAX                            :
INFORMATION SERVICES, LLC, EXPERIAN                 :
INFORMATION SOLUTIONS, INC., and                   :
LOANCARE, LLC,                                      :
                                                    :
                              Defendants.           :

---------------------------------------------------------------- x

VITALIANO, D.J.

On May 10, 2023, plaintiff Elisha Finman commenced this action against consumer reporting agency defendants TransUnion, LLC ("TransUnion"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") and since-dismissed defendant Loancare, LLC ("Loancare"), alleging violations of the Fair Credit Reporting Act ("FCRA").[1] Shortly after answering the complaint, defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which was referred to Chief Magistrate Judge Vera M. Scanlon. On August 15, 2025, Judge Scanlon issued a report and recommendation ("R&R") recommending that the motion be denied in full, and defendants timely filed objections. For the reasons that follow, those objections are sustained in part and overruled in part, and, as modified by this Memorandum & Order, the R&R is adopted as the opinion of the Court.

---

[1] In this Memorandum & Order, the term "defendants" refers only to the consumer reporting agency defendants.

1

<u>Background</u>[2]

Upon refinancing his mortgage, Finman contacted Loancare, the mortgage services company that had taken over his loan, to ask about the first payment date.  Compl., Dkt. No. 1, at ¶¶ 18-20.  He was informed by a Loancare representative that he should wait for a bill.  *Id.* ¶ 21.  No bill ever arrived though, so he decided to opt in to the company's "auto-pay" feature.  *Id.* ¶¶ 22-23.  But, then, noticing that no payments were being deducted from his bank account, he again reached out to Loancare in July 2022.  *Id.* ¶ 24.  He was told that the auto-pay feature was malfunctioning and that he should instead make a payment over the phone, which he promptly did.  *Id.* ¶¶ 25-27.  The following month, the auto-pay feature was again not working, and Finman was once more directed by Loancare to pay by phone.  *Id.* ¶¶ 29-30.

Despite multiple reassurances from Loancare that it would fix this recurring issue, Finman was yet again unable to make his monthly payment via the auto-pay feature in September 2022.  Compl. ¶¶ 28, 30-31.  Growing frustrated by Loancare's lack of action, and perhaps fretting more than a bit that he might be stuck in his own *Groundhog Day*-style time loop, he demanded that Loancare finally investigate as promised.  *Id.* ¶ 32.  Only then was he informed that his first monthly installment had actually been due in June 2022, not July 2022, and that each of the payments he had been making was being used to cover part of the previous month's bill.  *Id.* ¶¶ 33-34.  Upon hearing this, Finman immediately made a "double payment" to catch up on all of the outstanding charges.  *Id.* ¶ 35.  Notwithstanding this "double payment," Loancare subsequently marked Finman late as to both August 2022 and September 2022.  *See id.* ¶ 45.  Relying on this information, each of the defendants then allegedly prepared credit reports concerning Finman that

---

[2] Unless otherwise noted, the background facts are drawn from the complaint and, for purposes of this motion, deemed to be true.

contained late payment notations on his Loancare account for those months.  *Id.* ¶¶ 44-45.

On or around February 6, 2023, after apparently discovering what Loancare had done, Finman sent each of the defendants dispute letters claiming that the information furnished by Loancare was inaccurate.  Compl. ¶ 51.  TransUnion responded first on February 13, 2023, stating in relevant part that the disputed information did not show up on Finman's TransUnion credit report even though, according to Finman, it did.  *Id.* ¶¶ 52-53.  Two weeks later on March 1, 2023, Equifax and Experian each replied as well.  *Id.* ¶ 57; Ex. 2, Dkt. No. 41-2.[3]  Neither, after corresponding with Loancare about the dispute and verifying the disputed information, decided to revise its reporting.  Compl. ¶¶ 57, 66; *see* Ex. 2.

Various credit grantors have apparently reviewed Finman's credit reports since then, either through hard or soft credit checks.  Compl. ¶ 65.  While most of these credit checks have been to unknown effect, at least one financial entity, according to Finman, denied him a new line of credit after spotting the late payment notations on his credit report.  *Id.* ¶¶ 61-63.

Legal Standards

When reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  In the absence of any objections, the court need only be satisfied that there is no clear error on the face of the record.  *See Dafeng Hengwei Textile Co. v. Aceco Indus. &*

---

[3] Though the complaint alleges that Experian never responded, Compl. ¶ 58, the copy of Experian's investigation report attached as an exhibit to defendants' motion proves otherwise, Ex. 2.  This document is the type of document that ordinarily could not be considered at this stage, but here it is "integral" to the complaint—especially in light of Finman's concession in his opposition brief, which constitutes a binding judicial admission, that it is a true and correct copy of the results overview sent to him.  *See Silber v. TransUnion, LLC*, No. 23-cv-07182 (NSR) (JCM), 2025 WL 588620, at *2 (S.D.N.Y. Feb. 24, 2025) (the "integral" exception); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (judicial admissions in briefs).

*Com. Corp.*, 54 F. Supp. 3d 279, 283 (E.D.N.Y. 2014).  However, where an objection has been made, the court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  To be proper, objections must be timely and specific.  *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).  While a properly made objection may "repeat arguments that were previously raised," "nonspecific or merely perfunctory responses" are improper and reviewed only for clear error.  *Id.* at 361 (quoting *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022)) (internal quotation marks omitted).  Proper objections also "generally may not raise new arguments not previously made before the magistrate judge."  *Id.* at 359.

On de novo review of a Rule 12(c) motion for judgment on the pleadings, a court "employ[s] the same . . . standard applicable to dismissals pursuant to [Rule] 12(b)(6)."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)) (internal quotation marks omitted).  Therefore, to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While this "plausibility standard is not akin to a 'probability requirement,' . . . [it does ask] for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  In making this determination, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Viet. Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

<u>Discussion</u>

I.    <u>Section 1681e Claim – Objections</u>

Under 15 U.S.C. § 1681e, consumer reporting agencies are obligated, when preparing a credit report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  To establish that a consumer reporting agency has breached this statutory duty, a plaintiff has to prove that: (1) "the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report"; (2) "the consumer reporting agency reported inaccurate information about the plaintiff"; (3) "the plaintiff was injured"; and (4) "the consumer reporting agency's negligence proximately caused the plaintiff's injury."  *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019) (quoting *Gestetner v. Equifax Info. Servs. LLC*, No. 18 Civ. 5665 (JFK), 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019)) (internal quotation marks omitted).  "[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary."  *Id.* (quoting *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 209 (D. Conn. 2013)) (internal quotation marks omitted).  In the Second Circuit, "a credit report is inaccurate 'either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'"  *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) (quoting *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021)).

A.    <u>Section 1681e Claim as to August Payment</u>

Starting with Finman's Section 1681e claim as to his August payment, defendants reported that it was late, and it is far from clear that the report was accurate.  Yet, the haziness about the

accuracy of the report does not work to Finman's favor. In fact, it favors dismissal because the challenged information is not of a stripe that can give rise to a cognizable claim under FCRA. To be actionable, disputed information must be "objectively and readily verifiable." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023). It does not matter, for purposes of this inquiry, whether the "purportedly inaccurate information is legal or factual in nature." *Id.* at 43. Consumer reporting agencies "are not required to adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report," and any information that is not objectively and readily verifiable cannot form the basis of a Section 1681e claim. *Hossain v. Portfolio Recovery Assocs., LLC*, 693 F. Supp. 3d 358, 363 (E.D.N.Y. 2023).

Given the complexity of the underlying facts, it would have been, for all intents and purposes, impossible for defendants to objectively and readily verify the accuracy of the late payment notation for August 2022. *See Silver v. Top Line Reporting Inc.*, No. 25-cv-4375 (BMC), 2025 WL 2959055 (E.D.N.Y. Oct. 16, 2025). Unresolved questions litter the record. Should Finman have known about the start date for his payments? Would he have been able to make the June 2022 payment if the auto-pay system had been operational? Under what authority, contractual or otherwise, was Loancare applying the payments Finman made in certain months to the deficits he had supposedly incurred in other months? Why did Loancare never take the time to explain to Finman what it was doing? It would have been unrealistic to expect defendants to wade into this factual mess and, like Sherlock Holmes, track down the truth of the matter. Under FCRA, they were not required to do so, and Finman is not entitled to recover on this claim.

B.     Section 1681e Claim as to September Payment

Due to a litigation quirk, the same result cannot be obtained with respect to Finman's Section 1681e claim relating to the September payment. Cutting to the chase, defendants' motion

6

does not put the accuracy of that reporting in issue. *See* Dkt. No. 41, at 7. Nor is it the case that dismissal of the claim is warranted on other grounds, such as defendants' suggestion that one of the essential components of the claim, the "failure to follow reasonable procedures" element, was not adequately pleaded. Defendants do not clearly advance this line of reasoning until their reply brief—and it is not explained in any detail until their objections to the R&R. They have, as a result, waived this argument.[4] *Anghel v. Sebelius*, 912 F. Supp. 2d 4, 14 (E.D.N.Y. 2012); *Nambiar*, 158 F.4th at 359. Even if the argument had not been waived, it still would fail. Contrary to what defendants contend, the fact that Finman may have failed to sufficiently plead a similar element in his 15 U.S.C. § 1681i claim, *see* discussion *infra*, does not necessarily mean that Finman also failed to sufficiently plead the element in his 15 U.S.C. § 1681e claim. *See Choudhury v. Citibank, N.A.*, No. 18 CV 02188 (RJD) (ST), 2018 WL 11447942, at *4 (E.D.N.Y. Dec. 7, 2018). The two types of claims are concerned with completely different concept areas: Section 1681e with report creation and Section 1681i with report re-investigation. *Compare* 15 U.S.C. § 1681e, *with* 15 U.S.C. § 1681i. At any rate, in line with the R&R, this claim survives defendants' motion.

II.     Section 1681i Claim – Objections

Moving on to Finman's next set of claims, 15 U.S.C. § 1681i "imposes an additional duty upon [consumer reporting agencies] to reasonably reinvestigate 'any item of information contained in a consumer's file' if the item is disputed by the consumer." *Choudhury*, 2018 WL 11447942, at *3 (quoting 15 U.S.C. § 1681i(a)). To assert a Section 1681i claim, a plaintiff must allege that: (1) "the credit information [the consumer reporting agency] maintained on his behalf was inaccurate"; (2) "he disputed the inaccurate information and the dispute was 'not frivolous or

---

[4] In their objections, defendants also belatedly question the sufficiency of the complaint's allegations as to another of the elements of Finman's Section 1681e claim—this time, the "willfulness" element. This argument, too, has been waived. *Nambiar*, 158 F.4th at 359.

irrelevant'"; (3) the consumer reporting agency "failed to conduct a reasonable reinvestigation into the inaccurate information"; and (4) the consumer reporting agency's "failure to reinvestigate caused tangible or intangible damage." *Id.* (quoting *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011)).

A.    Section 1681i Claim as to August Payment

With respect to Finman's Section 1681i claim arising out of the August payment, what would appear to be the obvious answer is also the correct one.  Dismissal is required by the force of the logic supporting dismissal of his Section 1681e claim arising out of the same August payment.  Dismissal is required on this claim too because Finman cannot show that the reported information under challenge was objectively and readily verifiable at the time the consumer reporting agencies conducted their investigations.  *See Khan*, 2019 WL 2492762, at *3.  This claim does not survive, defendants' objection is sustained, and the R&R is modified accordingly.

B.    Section 1681i Claim as to September Payment

On the other hand, Finman's Section 1681i claim as to the September payment cannot be dispatched by the same analysis, as defendants, again, never made any argument to that effect.  But its days are numbered nonetheless.  Even if the supplementary materials submitted by defendants as to this claim (i.e., the "Automated Consumer Dispute Verification" forms) are set to the side, the allegations in the complaint pertaining to this claim are facially insufficient—at least, that is, as to Equifax and Experian.  Beyond mere conclusory statements that the two credit bureaus "did not timely evaluate or consider" the contents of Finman's dispute letter and "did not timely make an attempt to substantially or reasonably verify" the contested information, Compl. ¶ 69, there is nothing in the complaint describing "the unreasonable aspects of [Equifax's and Experian's] investigation[s]," *Manzano v. Trans Union (of Del.) LLC*, No. 1:23-CV-5990 (JGLC)

(JLC), 2024 WL 3194091, at *4 (S.D.N.Y. June 27, 2024), *report and recommendation adopted*, 2024 WL 3567704 (S.D.N.Y. July 29, 2024).  Something more was needed, notwithstanding the lack of discovery, given that Finman was entitled to ask, under FCRA, for Equifax and Experian to provide "a description of the procedure[s] used" to reinvestigate the disputed information.  15 U.S.C. § 1681i(a)(6)-(7).  In the absence of more specific allegations about the unreasonableness of the procedures in question, the claims against Equifax and Experian must be dismissed.

Yet the same cannot be said as to the allegations against the third defendant, TransUnion.  Under the facts alleged, it does not appear that TransUnion made any reinvestigation at all, let alone a reasonable one.  Indeed, in view of Finman's allegations that his TransUnion credit report did in fact contain a late payment notation for the month of September 2022, TransUnion's letter to the contrary suggests that the credit bureau did not even make the effort to review Finman's file before writing off his concerns entirely.  Compl. ¶¶ 52-53.  Without even a baseline reinvestigation to speak of, the reasonableness issues that tripped up Finman's claims against the other two credit bureaus count for nothing, and this claim can therefore proceed in the ordinary fashion.

III.    Remainder of R&R

Aside from the timely objections, the Court reviews the remainder of Chief Magistrate Judge Scanlon's R&R for clear error and finds it to be correct, well-reasoned, and free of any clear error.  *See Dafeng*, 54 F. Supp. 3d at 283.

## Conclusion

For the foregoing reasons, de novo review of the objections brings mixed results.  Objections brought by all three defendants as to Finman's Section 1681e and Section 1681i claims, insofar as they relate to the August payment, are sustained in line with the reasoning set forth in this Memorandum & Order, and the claims are dismissed as to all three defendants.  Second, the

objections brought by all three defendants as to the Section 1681e claim relating to the September payment are overruled, and the claim can proceed.  Finally, the objections brought by Equifax and Experian with respect to Finman's Section 1681i claim as to the September payment are sustained, but the objection brought by TransUnion as to that same claim is overruled.  Finman's Section 1681i claim as to the September payment is therefore dismissed only as to Equifax and Experian.  Now, as modified by this Memorandum & Order, Judge Scanlon's R&R is adopted as the opinion of the Court.

The parties are referred to Chief Magistrate Judge Scanlon for the continued pretrial management of this case.

So Ordered.

Dated: Brooklyn, New York
       April 19, 2026

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge